RALPH H. SEELYE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62952.   Promulgated January 5, 1934.

*Joseph Earl Perry, Esq.,* for the petitioner.
*Prew Savoy, Esq.,* for the respondent.

OPINION.

SMITH: The question in issue in this proceeding is whether the 100 shares of General Electric Co. common stock sold by the petitioner on January 9, 1929, were the 100 shares purchased by him in 1927 at a cost of $9,882.50, or the 100 shares purchased by him on December 10, 1928, for $17,725. The respondent has determined the deficiency upon the basis of article 58 of Regulations 74, which provides, so far as material, as follows:

* * * When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock. The excess of the amount realized on the sale over the cost or other basis of the stock will constitute gain. * * *

It is the contention of the respondent that when, on December 8, 1929, the petitioner deposited with his brokers a certificate for 100 shares of General Electric Co. common stock as collateral to bolster up his margin account the certificate no longer constituted property of the petitioner and that the petitioner had only a claim against the brokers for 100 shares of General Electric Co. common stock which might be satisfied by the broker by the delivery to the petitioner of any certificate for 100 shares of General Electric Co. common stock.

It is the contention of the petitioner that he merely pledged with his brokers the certificate of stock and that the brokers had no right to sell or transfer the certificate delivered without his order to do so; that at the time he deposited the certificate he instructed the brokers not to sell it; furthermore, that when on January 9, 1929, he gave the brokers an order to sell 100 shares of General Electric Co. common stock he instructed them to sell the 100 shares which he had purchased on December 10, 1928.

In his brief counsel for the petitioner states that the petitioner pledged the certificates—

\* \* \* with his brokers as collateral with distinct orders not to sell it, but with implied authority to do so on one condition, namely, if the petitioner should fail to pay his indebtedness to the brokers. That condition never occurred, for he never did fail to pay his indebtedness and he never, during 1929, authorized the sale of that stock. \* \* \*

The evidence with respect to the agreement made by the petitioner with his brokers with respect to the deposit of the certificate of stock is not very definite. The petitioner testified that when he deposited the certificate, " I told them it was to be used as collateral with other stock which I had as collateral, and was not to be sold." The brokers did not testify. At the time the certificate was put up as collateral it was endorsed in blank by the petitioner. Prior to the time that it was deposited with the brokers the petitioner received dividends upon the stock. After its deposit all dividends paid upon shares of stock of the General Electric Co. owned by the petitioner and held by the brokers were received by the brokers and credited upon the petitioner's margin account with them. The brokers' statement rendered to the petitioner on December 31, 1928, shows that the certificate which he had deposited was placed to his credit in the margin account along with the other 100 shares of General Electric Co. common stock which he had purchased on December 10, 1928. The petitioner was thus apprised by this statement that the certificate that he had deposited with the brokers was treated by them the same as the 100 shares of General Electric Co. common stock purchased by them for his account and risk on December 10, 1928.

We think it was clearly immaterial as to what the petitioner's intention was with respect to the shares of stock to be sold on January 9, 1929. *Burdett Stryker*, 21 B.T.A. 561; *J. T. Hedrick*, 24 B.T.A. 444; *Estate of Richard B. Turner*, 26 B.T.A. 1204. There is no evidence that the brokers sold any particular certificate for 100 shares of stock. From the brokers' standpoint it was immaterial what shares were sold.

Where shares of stock are carried on margin it is impossible to earmark the particular shares. In *Snyder* v. *Commissioner*, 54 Fed. (2d) 57, the court, referring to the so-called " first in, first out " rule, stated:

Evidently this rule was framed with especial reference to gains and losses in marginal transactions where, as in this case, shares purchased by a customer, while legally " owned " by him, are evidenced by a certificate not in his name but in the name of the broker until the transaction is closed out by sale or payment of the full purchase price. The evidence of the transaction and of the customer's ownership is merely a book entry of a debit of the shares purchased

against a credit of the margin paid. The shares are commingled with perhaps many thousand held by the broker for other customers, subject always to be hypothecated by him in raising the difference in money between the customer's margin and the purchase price of the shares, which of course the broker must pay in order to get a certificate. The shares are not delivered or earmarked or allocated to the customer even on the books.

Where shares "are sold from lots purchased at different dates and at different prices" in a marginal account it is clear that, in the absence of something else, the identity of the lots sold cannot be determined, hence the cited regulation, which is tersely called the "First in, first out" rule. The rule is an arbitrary one, as from the very nature of the case it must be; yet, again from the nature of the case, it is reasonable. * * *

See also *Towne* v. *McElligott*, 274 Fed. 960; *Skinner* v. *Eaton*, 45 Fed. (2d) 568); certiorari denied, 283 U.S. 837. The contention of the petitioner upon this point is not sustained.

The deficiency will be recomputed in accordance with other matters stipulated.

*Judgment will be entered under Rule 50.*