W. A. FORRESTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73591. Promulgated June 11, 1935.

*H. V. Blaxter, Esq.*, for the petitioner.
*Dean P. Kimball, Esq.*, for the respondent.

### OPINION.

MATTHEWS: This proceeding involves a deficiency in petitioner's income tax for the calendar year 1929 in the amount of $2,546.46. At the hearing the respondent moved for an increase in the deficiency on the ground that the revenue agent had erred in the calculation of the deficiency determined. A single issue is involved, whether the "first in, first out" rule, admittedly applicable to the sale of shares held in a broker's margin account, was correctly applied by the respondent, where petitioner's earliest purchased shares were put into his broker's account after various other later purchases were made through the account.

The facts and method of computation used by the respondent were stipulated and may be summarized as follows: Petitioner is an individual resident at Wilkinsburg, Pennsylvania. From April 23 to June 28, 1929, petitioner purchased through his brokers, Post & Flagg, Pittsburgh, on margin account, a total of 1,600 shares of the common stock of the Pittsburgh Screw & Bolt Corporation,

which were delivered to him later in the same year. The dates of purchase, number of shares, purchase prices, dates of delivery to petitioner, and certificate numbers were as follows:

| Date purchased | Number of shares | Price each | Total |
|---|---|---|---|
| 1929 | | | |
| April 23 | 100 | $29⅝ | $2,977.50 |
| April 23 | 50 | 29¾ | 1,495.00 |
| April 23 | 50 | 29⅝ | 1,488.75 |
| May 2 | 200 | 27½ | 5,530.00 |
| May 2 | 100 | 27¼ | 2,740.00 |
| May 2 | 100 | 27 | 2,715.00 |
| May 2 | 100 | 27 | 2,715.00 |
| May 2 | 300 | 27 | 8,145.00 |
| June 28 | 600 | 26 | 15,690.00 |
| Total | 1,600 | ---------- | 43,496.25 |

Date delivered

July 8, 1929    600 shares delivered in six 100-share lots, certificates numbered 6039 to 6044, inclusive.

July 20, 1929    1,000 shares delivered in ten 100-share lots, certificates numbered 6420 to 6429, inclusive.

On July 17, 1929, petitioner purchased through the same brokers, also on margin, 3,000 shares of the same stock for a total price of $80,872.50. These shares were purchased in blocks, some at $26.50 and some at $27. In addition to these 3,000 shares in the account from the date of purchase, petitioner delivered to the same brokers, Post & Flagg, to be placed in the same margin account, 2,300 shares of common which he had previously bought. The deliveries to the brokers were at various dates from October 26 to December 27, 1929, and the certificate numbers, costs, and dates of delivery to the account are given in a table below.

Of the 2,300 shares placed by petitioner in his account, 900 had been bought by him before June 1927. These were represented by certificate numbers 1573, 1574, and 8170 to 8176, inclusive. Of the remaining 1,400 shares, 300 were bought by the petitioner as follows:

    Certificate 6516 for 100 shares on July 23, 1929.
    Certificate 7519 for 100 shares on October 3, 1929.
    Certificate 04238 for 50 shares on October 4, 1929.
    Certificate 04217 for 50 shares on October 4, 1929.

The remaining 1,100 shares were part of the 1,600 shares bought in 1929 and delivered to him in the same year, mentioned above.

Beginning on November 11, 1929, and continuing through the year, petitioner sold 4,100 shares of the same stock from his margin account. The amounts, dates, and sale prices are set out in the following table, which shows the details of stock in petitioner's margin account and the sales from such account:

| | Stock in margin account | | | | Stock sold from margin account | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Date placed in account | Purchased | Cost | Date purchased | Certificate no. | Date sold | Number of shares | Selling price |
| 1929<br>July 17_____ | Shares<br>3,000 | $80,872.50 | July 17_____ | _____ | _____ | _____ | _____ |
| | Delivered to broker | | | | | | |
| Oct. 26_____ | 100 | 2,977.50 | Apr. 23, 1929_____ | 6039 | | | |
| Oct. 26_____ | 100 | 2,983.75 | Apr. 23, 1929_____ | 6040 | | | |
| Oct. 26_____ | 100 | 2,765.00 | May 2, 1929_____ | 6041 | | | |
| | | | | | 1929 | | |
| Nov. 11_____ | 100 | 555.55 | Before June 1927____ | 1573 | Nov. 11 | 90 | $1,827.01 |
| Nov. 12_____ | 100 | 2,765.00 | May 2, 1929_____ | 6042 | | | |
| Nov. 12_____ | 100 | 2,740.00 | May 2, 1929_____ | 6043 | | | |
| Nov. 12_____ | 100 | 2,715.00 | May 2, 1929_____ | 6044 | | | |
| Nov. 13_____ | 100 | 555.55 | Before June 1927____ | 1574 | | | |
| Nov. 13_____ | 100 | 2,615.00 | June 28, 1929_____ | 6427 | | | |
| Nov. 13_____ | 100 | 2,615.00 | June 28, 1929_____ | 6428 | | | |
| Nov. 13_____ | 100 | 2,615.00 | June 28, 1929_____ | 6429 | | | |
| Nov. 26_____ | 100 | 2,615.00 | June 28, 1929_____ | 6425 | Nov. 26 | 110 | 2,070.60 |
| Nov. 30_____ | 100 | 2,615.00 | June 28, 1929_____ | 6424 | | | |
| | | | | | Dec. 2 | 100 | 1,908.50 |
| | | | | | Dec. 6 | 50 | 966.74 |
| Dec. 9_____ | 100 | 424.00 | Before June 1927____ | 8170 | Dec. 9 | 450 | 8,600.74 |
| Dec. 9_____ | 100 | 424.00 | Before June 1927____ | 8171 | | | |
| Dec. 9_____ | 100 | 424.00 | Before June 1927____ | 8172 | | | |
| Dec. 9_____ | 100 | 424.00 | Before June 1927____ | 8173 | | | |
| Dec. 9_____ | 100 | 424.00 | Before June 1927____ | 8174 | | | |
| | | | | | Dec. 10 | 150 | 2,887.75 |
| Dec. 11_____ | 100 | 2,690.00 | July 23, 1929_____ | 6516 | | | |
| Dec. 11_____ | 100 | 2,456.25 | Oct. 3, 1929_____ | 7519 | | | |
| Dec. 11_____ | 50 | 1,228.13 | Oct. 4, 1929_____ | 04238 | | | |
| Dec. 11_____ | 50 | 1,228.12 | Oct. 4, 1929_____ | 04217 | | | |
| | | | | | Dec. 12 | 150 | 2,825.24 |
| Dec. 27_____ | 100 | 424.00 | Before June 1927____ | 8175 | | | |
| Dec. 27_____ | 100 | 424.00 | Before June 1927____ | 8176 | Dec. 31 | 3,000 | 53,505.00 |

The respondent in his final determination reckoned the first 700 shares sold as coming from what he considered to be petitioner's original holdings, to wit, certificates numbered 8170 to 8176, inclusive, with a total cost of $2,968. He also determined that the balance of the 4,100 shares sold, or 3,400 shares, came from the stock purchased in 1929, including that delivered to the petitioner and redelivered by him to the broker, and was sold in the order in which it had been purchased. For these 3,400 shares a cost basis of $92,019.75 was allowed, made up as follows:

| | |
| --- | --- |
| 200 shares_____ | $5,961.25 |
| 800 shares_____ | 21,845.00 |
| 600 shares_____ | 15,690.00 |
| 1,800 shares_____ | 48,523.50 |
| Total _____ | 92,019.75 |

On his return petitioner claimed a cost for the 4,100 shares sold of $111,293.75.

The petitioner included nothing in the capital net gain and capital net loss section of his return.

All capital stock of the Pittsburgh Screw & Bolt Corporation purchased through or delivered to the margin account was merged

and blended and lost its identity, with the result that none of the stock sold from the margin account can be identified as being any particular. stock purchased through or delivered to the margin account.

At the hearing the respondent moved for an increase in the deficiency by reason of the revenue agent's error in failing to take into account two certificates, Nos. 1573 and 1574, for 100 shares each, and with the same cost of $5.5555 a share. This was obviously an oversight and the cost of these shares should be reckoned in the recomputation as contended by respondent.

The respondent contends simply that in the application of the first in, first out rule, as set out in article 58, Treasury Regulations 74, the stock earliest purchased by the taxpayer, regardless of the date when it was first deposited in the margin account, must be taken, in the absence of any proof of identity of particular shares, to be that first sold.

Counsel for petitioner admits that the first in, first out rule applies to stock in a broker's margin account, citing *John A. Snyder*, 20 B. T. A. 778; 54 Fed. (2d) 57; *Burdett Stryker*, 21 B. T. A. 561; *Richard B. Turner Estate*, 26 B. T. A. 1204; *John A. Snyder*, 29 B. T. A. 39; *Ralph H. Seelye*, 29 B. T. A. 695; but contends that in applying the rule, the first stock sold and unidentifiable shall be taken to be the first stock placed by the taxpayer in the particular account, not the stock which he had earliest purchased. Admitting also that this question is one of first impression, petitioner contends that his view follows logically from what we said in *J. T. Hedrick*, 24 B. T. A. 444.

We are unable to accept petitioner's view. In the *Hedrick* case we dealt with a very different situation, the withdrawal from an account of stock by the taxpayer who did not sell it but pledged it to a bank. We said:

> * * * The "first in" the account from which the 1923 sale was made, was the purchase of $15,000 scrip on September 29, 1922. The "next in" was the $11,900 scrip purchased October 27, 1922, but $15,000 scrip was taken out on November 15, 1922, and delivered to the Hanover Bank as collateral for a loan to petitioner. This $15,000 scrip, then, is the "first out" of the account and we see no reason why the same principles should not be followed in the case of stock delivered to the customer, as well as with respect to stock sold for the customer. After delivery of this $15,000 scrip, the $11,900 purchased on October 27 became the "first in" the account. * * *

The rule is simply one of common convenience to enable the respondent to fix readily taxable gains on stock sales where identification of particular shares is impossible. When a lot of stock is taken from the account, whether for sale by the taxpayer, for pledging as collateral elsewhere, or for any other reason, it is withdrawn for all purposes from the account in question, and the cost basis of the

shares remaining after its withdrawal should be determined by the application of the simple rule of first in, first out. That is all that we said in the *Hedrick* case.

Because the first stock taken from a particular account for any purpose is to be treated as " first out ", the converse does not necessarily follow, namely, that the first stock placed in a particular account shall be treated as the " first in ", regardless of its date of purchase. The rule is intended to hit the earliest purchases of unidentifiable stock. It is unambiguous. It does not mean, of course, that the taxpayer's next sale will be held to be a sale of all the earliest purchases he may hold, regardless of their situation, for identification of many of these earliest purchases may be possible. Separation of the taxpayer's shares in several brokers' accounts is in itself identification, as far as it goes. We are therefore brought back to the lot of unidentifiable shares in a particular broker's account, and the rule is applied to the " earliest purchases " within this account. It must mean the stock earliest bought by the taxpayer and not the earliest bought through the particular account or earliest placed in the account, for such a construction would, as we have said, wholly defeat the object of the rule. Upon this point, therefore, we must sustain the respondent.

One final point remains for determination. In his return petitioner made no claim to have his tax computed under the capital net gain provisions of the statute, section 101 (a), Revenue Act of 1928. Under his original basis of computation, his counsel stated at the hearing that no occasion arose to make such a claim, since he considered the earliest purchase in the account to have been the 3,000 shares purchased in July 1929, but he now asks the benefit of this section should the respondent's method be followed. It would apply, of course, only to those 900 shares which, under the stipulation of facts, were purchased by the petitioner before June 1927 and placed in the margin account in 1929. The cost of the shares sold as determined by petitioner was $119,293.75, which is the sum of the cost of the 3,000 shares purchased through the account on July 17 ($80,-872.50) and the cost of the first 1,100 of the 1,600 purchased between April 23 and June 28 and placed in the account on various dates between October 26 and November 30 ($30,421.25). This latter amount is the cost of the 1,000 shares purchased between April 23 and May 2 ($27,806.25), and of 100 of the 600 shares purchased on June 28 ($2,615). Since the petitioner treated all the shares sold as being those purchased in 1929, he had no occasion to elect whether he would claim the benefit of the capital net gain provisions of section 101 (a) of the Revenue Act of 1928. He did elect through his counsel to claim such benefit if the determination is that the shares purchased prior

to June 1927 were sold. We have so determined and we hold, therefore, that the petitioner is entitled to the benefit of section 101 (a). Cf. *Samuel W. Weis*, 30 B. T. A. 478.

*Judgment will be entered under Rule 50.*