Constantine G. GRATSOS, Owner of the Steamship Audrey, libellant, Appellant,

v.

THE Steamship MOISIE BAY, in rem, and Gorrisen & Klaveness, A/S, Owner and/or operator of the Steamship Moisie Bay, in personam, respondents, Appellees.

SKIBS AKTIESELSKAPET ORENOR, as Owner of the Steamship Moisie Bay, and Tank Ore Corporation, libellants, Appellees,

v.

THE Steamship AUDREY, her engines, boilers, etc., and Constantine G. Gratsos, her owner, respondents, Appellants.

No. 8176.

United States Court of Appeals Fourth Circuit.

Argued Nov. 17, 1960.

Decided March 7, 1961.

Eugene Underwood, New York City (R. Arthur Jett, Norfolk, Va., and H. Barton Williams, New York City, on the brief), for appellants.

John F. Gerity and Hugh S. Meredith, Norfolk, Va. (William E. Fuller, Washington, D. C., on the brief), for appellees.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and HARRY E. WATKINS, District Judge.

## PER CURIAM.

On the evening of March 24, 1957, at approximately 2021 hours, during darkness and clear weather, with visibility good, wind moderate and tide ebb, a collision occurred between the Steamships Moisie Bay and Audrey in the vicinity of the approach to the Maryland Pilot Station off Cape Henry, Virginia. In separate libels each vessel charged that the collision was attributable wholly to the fault or negligence of the other. The proceedings were consolidated and the District Court for the Eastern District of Virginia held the Audrey solely at fault. The facts, as found, and the District Court's conclusions are fully disclosed in its opinion and supplemental memorandum.[1]

■ It is well settled that, on review of the judgment of the District Court sitting in admiralty without a jury, this court should not disturb findings unless clearly erroneous, that is, unless on the entire evidence we are left with the definite and firm conviction that a mistake has been committed. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. Entertaining no such conviction here and

being of the opinion that the trial judge correctly interpreted and applied the law, we affirm.

Unfortunately, the Audrey labors under the terrific burden of a finding, clearly supported by substantial evidence, that her engine log book, which should contain an accurate statement of certain events occurring prior to and leading up to the collision, was intentionally and fraudulently fabricated. We strongly favor the invocation of the principle "that intentional falsification of material records presumptively destroys the weight of the offender's evidence as to the entire case."[2] The trial judge made the additional statement, of which we approve, as follows:

> "While there are many inconsistencies and discrepancies in the Audrey's testimony, these only point significantly to a continuation of efforts to conceal the true facts. To detail the theory of the Audrey's case would unduly emphasize the fraud, and perhaps lend dignity to the fraudulent scheme."[3]

The Audrey complains that the District Court apparently predicated its decision upon the log book fraud and wholly failed to specify wherein she was guilty of any infraction of the Rules. But it is conceded that the Audrey was the "burdened" vessel in this crossing situation, with the duty to keep out of the way and to avoid crossing ahead of the Moisie Bay. The "privileged" vessel was the Moisie Bay whose duty it was to maintain her course and speed. It is implicit in the trial court's findings that the Audrey, disregarding her duty and obligation, set her course after leaving the vicinity of the Virginia Pilot Station and created a crossing situation, with the possibility of collision, which course was maintained without deviation until collision was imminent and at a

1. Skibs Aktieselskapet Orenor v. The Audrey, D.C.E.D.Va.1960, 181 F.Supp. 697.

2. 181 F.Supp. 697, 701.

3. 181 F.Supp. 697, 701.

time when it was too late to act effectively to prevent or avoid disaster.

On the credible evidence the court found certain facts which may be briefly reviewed. The Audrey was aware of the presence and location of the Virginia Pilot Boat and, to the northwest thereof, the presence and location of the Maryland Pilot Boat. The outgoing Audrey knew that the Moisie Bay was inbound and headed northwesterly. The exchange of Morse signal lights between Moisie Bay and the pilot boats was observed by Audrey when she started upon her course, crossing that of Moisie Bay, eleven minutes before the collision. These signals were not read by Audrey but they were understood to be "maybe for a pilot." Audrey knew, by taking instrument bearings, of the decrease in speed or reduction of headway of the Moisie Bay. These observations were made when the vessels were about one and one-half miles apart. Moisie Bay's admitted decrease in speed was not only to be anticipated but was actually known to Audrey and the latter was aware of the general need of an inbound vessel for a pilot in the ordinary course of navigation.

Audrey argues that her master could not have known, from the course and reduction in speed, the intention of Moisie Bay to pick up a pilot in the approaches to the Maryland Pilot Boat but it is difficult to reconcile her argument with the foregoing findings of the court. The District Court observed that, to reconstruct the course and speed of the Audrey in light of the fabricated log and inconsistencies revealed by the testimony was an impossible task; and, to accept Audrey's version would be tantamount to finding that she went fully astern ten minutes before the collision, which was exactly what the fabricated log disclosed. The court adopted the inference that if the original log had been produced it would have been unfavorable to the Audrey and, of necessity, her witnesses would then have testified to a contrary state of facts.

It was testified by Moisie Bay that she was gradually reducing speed so as to permit the pilot to board with safety and that she had changed her compass direction to compensate for a detected "set to the westward," thus maintaining her basic course to the agreed pilot rendezvous point. Audrey contends that it is clearly shown, by Moisie Bay's own evidence, that the latter, the privileged vessel, violated the requirement that she maintain her course and speed. This contention was carefully considered and fully discussed by the District Court at 181 F.Supp. at pages 701 and 702. We discern no error in the court's stated legal conclusions or in their application under the facts and circumstances of this case.

■ Lastly, we call attention to the rule as announced in The City of New York, 1893, 147 U.S. 72, 85, 13 S.Ct. 211, 216, 37 L.Ed. 84, as follows:

"* * * Where fault on the part of one vessel is established by uncontradicted testimony, and such fault is, of itself, sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel. There is some presumption at least adverse to its claim, and any reasonable doubt with regard to the propriety of the conduct of such other vessel should be resolved in its favor.
* * * *"

This principle has been heretofore approved and applied by this court. See Compania Nacional de Navegacao Casteiro Patrimonio v. Cabins Tanker Industries, Inc., et al., 1961, 285 F.2d 592; White Stack Towing Corporation v. Bethlehem Steel Co., 1960, 279 F.2d 419; Webb v. Davis, 1956, 236 F.2d 90.

Affirmed.